# EXHIBIT A

## Promissory Note

THIS IS TO CERTIFY THAT
THIS IS A TRUE & EXACT COPY
OF THE ORIGINAL.
CHICAGO TITLE INSURANCE CO.
BY:

# NOTE

CREECH
Loan #: 7000011020
MIN: 101543270000110204

| MAY 25, 2021 | BULLHEAD CITY, | ARIZONA |
|---|---|---|
| [Date] | [City] | [State] |

511 E BEVERLY AVE, KINGMAN, AZ 86409-3510
[Property Address]

**1. BORROWER'S PROMISE TO PAY**

In return for a loan that I have received, I promise to pay U.S. $142,500.00 (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is BROKER SOLUTIONS, INC. DBA KIND LENDING. I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2. INTEREST**

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 3.375%.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

**3. PAYMENTS**

**(A) Time and Place of Payments**

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the 1ST day of each month beginning on JULY 1, 2021. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on JUNE 1, 2051, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at 14511 MYFORD ROAD SUITE 100, TUSTIN, CA 92780 or at a different place if required by the Note Holder.

**(B) Amount of Monthly Payments**

My monthly payment will be in the amount of U.S. $629.99.

**4. BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

**5. LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**6. BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charge for Overdue Payments**

7000011020

If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.000% of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**7. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**8. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**9. WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

> If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.
>
> If Lender exercises this option, Lender shall give Borrower notice of acceleration. The

7000011020

notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

Bonnie Melinda Creech

- BORROWER - BONNIE MELINDA CREECH

*[Sign Original Only]*

Individual Loan Originator: **JOHN CLAUDE HEGGLIN**, NMLSR ID: **1054250**
Loan Originator Organization: **BARRETT FINANCIAL GROUP, L.L.C.**, NMLSR ID: **181106**
Loan Originator Organization (Creditor): **BROKER SOLUTIONS, INC. DBA KIND LENDING**, NMLSR ID: **6606**

# EXHIBIT B

## Borrower's Certification

# Borrower's Certification & Authorization

**CREECH**
Loan #: **7000011020**
MIN: **101543270000110204**

Date: **MARCH 23, 2021**

## Certification

In this document, "I," "me," and other first person pronouns refer to the borrower(s), whether singularly or collectively, who applied for the loan referenced above.

I, the undersigned, hereby certify the following:

1. I have applied for a mortgage loan to be arranged, but not funded, by **BARRETT FINANCIAL GROUP, L.L.C.**. In applying for the loan, I have completed a loan application containing various information on the purpose of the loan, the amount and source of the down payment, employment and income information, and assets and liabilities. I certify that all of the information is true and complete. I made no misrepresentations in the loan application or other documents, nor did I omit any pertinent information.
2. I understand that most loans require a full review of information provided on the application, including possible verification of the information. I agree that if my loan program does not require full documentation, **BARRETT FINANCIAL GROUP, L.L.C.** reserves the right to change the mortgage loan review process to a full documentation review. This may include verifying the information provided on the application with any employer and/or any financial institution.
3. I fully understand that it is a Federal crime punishable by fine or imprisonment, or both, to knowingly make any false statements when applying for a mortgage, as applicable under the provisions of 18 USCA §1014.
4. I provided a verbal and/or written authorization to order a consumer credit report and verify other credit related information in connection with my loan application, including but not limited to any mortgage or landlord reference and any other source of credit as determined by **BARRETT FINANCIAL GROUP, L.L.C.**.
5. I further authorize **BARRETT FINANCIAL GROUP, L.L.C.** to order a consumer credit report and verify other credit related information in connection with my loan application, including but not limited to any mortgage or landlord reference and any other source of credit as determined by **BARRETT FINANCIAL GROUP, L.L.C.**. I understand that the purpose for this order is for **BARRETT FINANCIAL GROUP, L.L.C.** to determine my eligibility and creditworthiness for the loan being applied for, as well as for other legitimate purposes associated with my account.

## Authorization to Release Information

To Whom It May Concern:

1. I have applied for a mortgage loan to be arranged, but not funded, by **BARRETT FINANCIAL GROUP, L.L.C.**. As part of the application process, **BARRETT FINANCIAL GROUP, L.L.C.** and the mortgage guaranty insurer (if any), may verify information contained in my loan application and in other documents required in connection with the loan, including accessing a new credit report, either before the loan is closed or as part of its quality control program.
2. I authorize you to provide to **BARRETT FINANCIAL GROUP, L.L.C.**, to any investor to whom a lender may sell my mortgage, and to the mortgage guaranty insurer (if any), any and all information and documentation that they request. Such information includes, but is not limited to, employment history and income; bank, money market, and similar account balances; credit history; and copies of income tax returns.
3. **BARRETT FINANCIAL GROUP, L.L.C.**, any investor to whom a lender may sell my mortgage, or the mortgage guaranty insurer (if any), may address this authorization to any party named in the loan application.
4. A copy of this authorization may be accepted as an original.
5. Your prompt reply to **BARRETT FINANCIAL GROUP, L.L.C.**, the investor who purchases my mortgage, or the mortgage guaranty insurer (if any) is appreciated.
6. Mortgage guaranty insurer (if any): **ESSENT GUARANTY INC**

## Execution

By signing below, I hereby certify and authorize (as applicable) the foregoing items of information.

*BONNIE MELINDA CREECH* 3/23/2021 SSN: [redacted]

**- BORROWER- BONNIE MELINDA CREECH - DATE -**