**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Bonnie Creech,<br><br>         Plaintiff,<br><br>v.<br><br>Barrett Financial Group LLC, et al.,<br><br>         Defendants. | No. CV-22-00871-PHX-SMB<br><br>**ORDER** |

Pending before the Court is Defendant Barrett Financial Group's ("Barrett") 12(b)(6) Motion to Dismiss (Doc. 35), the response by Plaintiff Bonnie Creech ("Creech") (Doc. 42), and the reply (Doc. 43). Also pending is Defendants Broker Solutions, Inc. dba Kind Lending, LLC ("Broker Solutions") and Kind Lending LLC's ("Kind Lending") Motion to Dismiss Plaintiff's First Amended Complaint (Doc. 41), Creech's response (Doc. 46), and the reply (Doc. 49). The Court has read and considered all of the pleadings and relevant case law and rules as follows:

**I.     BACKGROUND**

Creech filed her First Amended Complaint ("AC") making legal claims for violation of the Truth in Lending Act ("TILA"), violations of the Arizona Consumer Fraud Act ("ACFA"), breach of contract, and violation of good faith and fair dealing. The TILA violation claim is brought against Barrett and Broker Solutions, the ACFA claim is brought against Defendants Barrett and Hegglin, breach of contract is alleged against Broker Solutions, and it is unclear who the focus of the breach of good faith and fair dealing is

towards, but it appears to be against Broker Solutions through the acts of Defendant Hegglin.

The case centers around a loan to purchase a manufactured home in Kingman, Arizona. Creech applied for a loan with Defendant John Claude Hegglin ("Hegglin") who was working for Broker Solutions, Inc. dba Kind Lending. Creech received a loan pre-qualification agreement on March 23, 2021 that listed Barrett Financial Group, L.L.C. ("Barrett") as the lender. She was prequalified for a loan of $148,437 with interest over 30 years at 3.375%.

After Creech located a manufactured home she liked and would fit the needs of her elderly parents, she made an offer which was accepted. She alleges that the appraisal report was not timely sent to her, and the sellers told her they couldn't wait any longer for her to buy the house. Creech alleges that when she got the appraisal, the sellers agreed to a decrease in the price. After that Hegglin sent various documents that changed the origination charge, included an Architectural and Engineering Fee that Creech has already paid, and an increase in the mortgage insurance costs. During closing, Creech called Hegglin to ask about some of the changes. During the call, he also told Creech that the home she was buying did not have a Manufactured Home ("MH") Advantage sticker which made her ineligible for the original loan, so he switched her to a difference loan product with a higher Annual Percentage Rate. Creech signed the closing documents on May 20, 2021, but the loan was still not funded by May 25, 2021. As a result, Creech had to pay for her parents to stay in a hotel while waiting for the loan to fund. She also suffered stress, anxiety, and loss of appetite because of the delays. On May 26, 2021, Creech was presented with a third set of closing documents. These closing documents did not correct any of the previous errors, but she was forced to sign them in order to close and get her parents the housing they needed. Hegglin had promised to refund the engineering fee and promised that Creech would not be charged a second $250 mobile notary fee, but he did not do as promised.

## II. LEGAL STANDARD

Dismissal of a complaint, or any claim within it, for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) may be based on either a "'lack of a cognizable legal theory' or 'the absence of sufficient facts alleged under a cognizable legal theory.'" *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121–22 (9th Cir. 2008) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990)). In determining whether a complaint states a claim under this standard, the allegations in the complaint are taken as true and the pleadings are construed in the light most favorable to the nonmovant. *Outdoor Media Group, Inc. v. City of Beaumont*, 506 F.3d 895, 900 (9th Cir. 2007). A pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). But "[s]pecific facts are not necessary; the statement need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (internal quotation omitted). To survive a motion to dismiss, a complaint must state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## III. DISCUSSION

### A. TILA

TILA is a consumer protection statute that seeks to "avoid the uninformed use of credit." 15 U.S.C. § 1601(a). "TILA requires that lenders provide certain disclosures to borrowers reflecting the terms of the legal obligation between the parties." *Soriano v. Countrywide Home Loans, Inc.*, No. 09-CV-02415-LHK, 2011 WL 2175603, at *6 (N.D. Cal. June 2, 2011). The creditor is the liable party. *See Garcia v. Fannie Mae*, 794 F. Supp. 2d 1155, 1170 (D. Or. 2011) (pursuant to 15 U.S.C. § 1640(a), only creditors can be held liable for monetary penalties or an award of attorneys' fees for TILA violations, while in contrast § 1641(c) provides a right to rescind against a creditor's assignee).

Defendant Barrett moves to dismiss this claim because there is no factual basis for a claim under 15 U.S.C. § 1639b(c)(1) or § 1639b(b)(1)(A), and there is no private right of action under § 1640. Broker Solutions move to dismiss this claim because this section doesn't allow for a claim against the creditor.

i. 15 U.S.C. § 1639b(c)(1)

"For any residential mortgage loan, no mortgage originator shall receive from any person and no person shall pay to a mortgage originator, directly or indirectly, compensation that varies based on the terms of the loan (other than the amount of the principal)." 15 U.S.C. § 1639b(c)(1). The AC alleges that this section was violated because the origination fee doubled between the first disclosure and the final disclosure. However, Barrett provided copies of the documents.[1] The documents support their argument that the lender's paid compensation to Barrett stayed the same, specifically $2,850.00. Therefore, the Court finds no factual allegations to support a violation of § 1639b(c)(1).

ii. 15 U.S.C. § 1639b(b)(1)

Barrett argues that a mortgage originators duty of care is satisfied if they are (1) qualified, registered, and licensed under the SAFE Act, and (2) loan documents include the unique qualifier provided by the Nationwide Mortgage Licensing System Registry. Barrett argues that Plaintiff did not plead facts relating to either of those elements. However, as Plaintiff points out, § 1639b(b)(1) says that each mortgage originator must satisfy the two requirements above "in addition to the duties imposed by otherwise applicable provisions of State or Federal law." 15 U.S.C. § 1639b.

Plaintiff's position is that Barrett, through Hegglin, breached fiduciary duties to Creech and in turn violated the ACFA. Those violations then satisfy the duty of care requirement for liability under § 1639b(b)(1). Plaintiff has not provided any case law to support this position, and the Court has been unable to find any law to support the

---

[1] When considering a motion to dismiss, courts may consider documents plaintiff attaches to the complaint or incorporates by reference without converting it into a motion for summary judgment. *See United States. v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

interpretation. Plaintiff attempts to apply liability for disclosure violations, covered by 15 U.S.C. § 1639, into § 1639b(b)(1) is not supported.

### iii. 15 U.S.C. § 1640

Here, Barrett argues that liability under 15 U.S.C. § 1640 only applies to creditors, and Barrett is a mortgage originator. Barrett further argues that, to the extent that TILA provides a private cause of action against a mortgage originator, it is limited to violations of the anti-steering prohibitions. Section 1640 specifically only refers to creditors, but § 1639b(d)(1) makes § 1640 applicable to mortgage originators.

> For purposes of providing a cause of action for any failure by a mortgage originator, other than a creditor, to comply with any requirement imposed under this section and any regulation prescribed under this section, section 1640 of this title shall be applied with respect to any such failure by substituting "mortgage originator" for "creditor" each place such term appears in each such subsection.

15 U.S.C. § 1639b(d)(1). "The phrase 'this section' refers only to § 1639b, and not to § 1639c, given Congress's methodology for drafting federal statutes." *Sundby v. Marquee Funding Grp., Inc.*, No. 3:19-CV-0390-GPC-AHG, 2020 WL 5535357, at *19 (S.D. Cal. Sept. 15, 2020) (remanded on different grounds). Therefore, the Court finds that liability under § 1640, as applied to mortgage originators is only available for a violation of § 1639b.

### iv. Vicarious Liability

Plaintiff attempts to make an argument that as the agent of the lender, Barrett is vicariously liable for the TILA violations. Plaintiff relies in part on *Plata v. Long Beach Mortg. Co.*, No. C 05-02746 JF, 2005 WL 3417375 (N.D. Cal. Dec. 13, 2005). In that case, the court found that plaintiff's allegations of agency between a broker and lender were sufficient to survive a motion to dismiss, but it was in relation to a negligence claim, not TILA. In *Consumer Sols. REO, LLC v. Hillery*, No. C-08-4357 EMC, 2010 WL 1222739, at *5 (N.D. Cal. Mar. 24, 2010), the Court found that the assumption that common law agency applies to TILA "would be consistent with the general rule that remedial laws such as TILA designed to protect consumers should be liberally construed."

However, these cases all discuss the lender's liability for the acts of the "agent," generally a servicer. These cases do not support the reverse, that the broker can be liable for the acts of the lender. It is the lender that is ultimately responsible for TILA disclosures. *See Roach v. Option One Mortg. Corp.*, 598 F. Supp. 2d 741, 749 (E.D. Va. 2009) (importantly, TILA defines a "creditor," the party responsible for providing the disclosures); *Kissinger v. Wells Fargo Bank, N.A.*, 888 F. Supp. 2d 1309 (S.D. Fla. 2012) (creditor could be held vicariously liable pursuant to Truth in Lending Act (TILA), under agency theory, for loan servicer's failure to respond properly to borrowers' request for information about owner of their mortgage note).

Plaintiff attempts to argue around this concept by claiming that they are all agents of one another, but that vicarious responsibility put the liability on the principal for the acts of the agent. If there is not principal/agent relationship, then there is no vicarious liability. Therefore, the Court finds Barrett cannot be liable to failed disclosures that are the obligation of the lender.

Overall, the Court finds that the claims raised against Barrett pursuant to TILA must be dismissed.

      iv. <u>Broker Solutions</u>

Next, 15 U.S.C. § 1639 mandates certain disclosures for certain mortgages. Section 1639(a) requires the creditor to disclose the annual percentage rate and the amount of regular monthly payment if the credit transaction has a fixed rate of interest. Section 1639(b) requires the disclosures be made "not less than 3 business days prior to consummation of the transaction." 15 U.S.C. § 1639(b)(1). "After providing the disclosures required by this section, a creditor may not change the terms of the extension of credit if such changes make the disclosures inaccurate, unless new disclosures are provided that meet the requirements of this section." 15 U.S.C. § 1639(b)(2)(A). The AC alleges that Broker Solutions violated TILA Regulation Z by failing to timely disclose the increased costs of the loan prior to closing, by doubling the origination fee in violation of 15 U.S.C. § 1609(c)(1), and by failing to timely disclose that the loan product initially

1  offered required the manufactured home to have a MH advantage sticker.

2  Broker Solutions argues that there are no factual allegations identifying what, if
3  anything, they failed to disclose. Creech's complaint is that they didn't timely disclose the
4  required information, not that they didn't disclose, so this argument fails. Broker Solutions
5  next argue there is no violation of § 1609(c)(1) because that section doesn't exist. Of
6  course, that argument is disingenuous because it is obviously a typo, which they
7  acknowledge later by arguing that § 1639b(c)(1) doesn't apply to them. Creech does not
8  respond to this specific argument and the Court agrees that § 1639b(c)(1) only applies to
9  loan originators, not creditors. Therefore, the motion to dismiss as it relates to TILA claims
10 against Broker Solutions will be granted only in so far as the claim relies on a violation of
11 § 1639b(c)(1), all other claims will remain.

**B. ACFA**

ACFA prohibits:
[A]ny deception, deceptive or unfair act or practice, fraud, false pretense, false promise, misrepresentation, or concealment, suppression or omission of any material fact with intent that others rely . . . in connection with the sale or advertisement of any merchandise whether or not any person has in fact been misled.

A.R.S. § 44-1522(A). To state a claim under the Arizona Consumer Fraud Act the plaintiff must show "(1) a false promise or misrepresentation made in connection with sale or advertisement of merchandise, and (2) consequent and proximate injury." *Stratton v. Am. Med. Sec., Inc.*, No. CV–07–1491–PHX–SMM, 2008 WL 2039313 at *7 (D. Ariz. May 12, 2008). "[T]he misled consumer must have suffered some damage as a result of the misrepresentation." *Nataros v. Fine Arts Gallery of Scottsdale, Inc.*, 612 P.2d 500, 504 (Ariz. Ct. App. 1980).

ACFA applies to mortgages. *See Munoz v. Fed. Nat. Mortg. Assoc.*, No. CV-13-01826-PHX-GMS, 2014 WL 3418426, at *3 (D. Ariz. July 14, 2014). First, the ACFA claim was not brought against Broker Solutions. Yet, in response to Broker Solutions motion to dismiss, Creech attempts to explain why the claim should apply to Broker Solutions. Plaintiff cannot attempt to assert the claim against Broker Solutions in her

1  response, so any potential claim Creech thinks she has against Broker Solutions for
2  violation of ACFA will not be allowed.

3  Here, Barrett argues that this claim fails because Plaintiff has failed to plead an
4  injury. Barrett also argues that the claim fails because it fails to meet the pleading
5  requirements of Rule 9(b).

          i.     Injury

7  "A misrepresentation causes injury where the consumer actually relies on it."
8  *Cheatham v. ADT Corp.*, 161 F. Supp. 3d 815, 825–26 (D. Ariz. 2016). Barrett argues that
9  Creech's claim under ACFA fails because she did not rely on any misrepresentation or
10 false promise because she knew about them and went ahead with the loan anyway.
11 Therefore, there was no reliance. Creech counters by arguing she relied on Barrett and
12 Hegglin to timely provide a loan, and that they misrepresented that she was qualified for
13 the loan. Then, during the closing, the loan was canceled because the manufactured home
14 did not have the MH Sticker. As a result, she experienced economic loss and stress when
15 the loan did not close. This is seemingly separate from the reliance that Barrett argues is
16 missing in making the decision to finalize the final loan terms that were offered. Therefore,
17 the Court finds that Creech has pled reliance that led to damages.

          ii.    Rule 9(b)

19 A claim brought under ACFA must comply with the pleading requirement of
20 Federal Rule of Civil Procedure 9(b). *Riehle v. Bank of Am., N.A.*, No. CV-13-00251-
21 PHX-NVW, 2013 WL 1694442, at *3 (D. Ariz. Apr. 18, 2013). "The particularity
22 requirement of Rule 9(b) requires claims for fraud 'to be pled with sufficient specificity to
23 allow a defendant an opportunity to defend against the claim, rather than simply deny they
24 have done anything wrong.'" *Williamson v. Allstate Ins. Co.*, 204 F.R.D. 641, 644 (D.
25 Ariz. 2001) (quoting *Foster v. Allstate Ins. Co.*, No. 93–0960–BTM, 1995 WL 396646, at
26 *2 (S.D. Cal. Oct. 7, 1993)). "A complaint of fraud must specify 'the who, what, when,
27 where, and how' of the alleged misconduct." *Gould v. M & I Marshall & Isley Bank*, 860
28 F. Supp. 2d 985, 988 (D. Ariz. 2012) (quoting *Vess v. Ciba-Geigy Corp.*, 317 F.3d 1097,

1106 (9th Cir. 2003)). Barrett complains that the AC reflects a shotgun pleading and that because of that the ACFA claim does not satisfy the requirements of Rule 9(b). However, from the AC, one can ascertain that the Hegglin is the "who" that failed to disclose problems with the loan, ie: that she needed an MH Sticker to qualify and failed to timely disclose the appraisal. "A failure to disclose can constitute fraud only if the defendant had a duty to disclose." *Gould v. M & I Marshall & Isley Bank*, 860 F. Supp. 2d 985, 989 (D. Ariz. 2012). Here, Creech has pled facts to support that Hegglin had a fiduciary duty to Creech which would create a duty to disclose. Creech pled the "where," "when" and "how" Hegglin shared or failed to share information with her. Therefore, the Court finds the claim under ACFA is sufficiently pled.

### C. Breach of Contract

The breach of contract claim does not specify to whom it applies. Barrett, therefore, did not move to dismiss that claim. In the response, Plaintiff argues that the breach of contract claim should not be dismissed and then Barrett responded in the reply. To assert a claim for breach of contract, Plaintiff must allege: (1) the existence of a contract; (2) a breach; and (3) resulting damages. *Thomas v. Montelucia Villas, LLC*, 302 P.3d 617, 621 (2013). Barrett argues it should be dismissed because it is not a party to any contract. The only contract is the loan agreement to which they are not a party. The Court agrees that the AC has not pled any contract to which Barrett is a party. Therefore, any claim Creech proports to bring for breach of contract against Barrett will be dismissed.

Broker Solutions also moves to dismiss this claim arguing that the AC does not allege a contract. In responding, Creech argues that Hegglin and Barrett agreed to assist her in obtaining a loan on specific terms. However, these allegations do not relate to Broker Solutions. Nor has Plaintiff pled facts to support any contention that a pre-qualification letter, a good faith estimate of charges, or disclosures required under TILA form a contract. Broker Solutions motion to dismiss the breach of contract claim will be granted.

### D. Good Faith and Fair Dealing

"Arizona 'law implies a covenant of good faith and fair dealing in every contract.'"

- 9 -

1  *Bike Fashion Corp. v. Kramer*, 46 P.3d 431, 434 (Ariz. Ct. App. 2002) (quoting *Rawlings v. Apodaca*, 726 P.2d 565, 569 (Ariz. 1986)). "[I]mplied terms are as much of a contract as are the express terms." *Wells Fargo Bank v. Ariz. Laborers, Teamsters & Cement Masons Loc. No. 395 Pension Trust Fund*, 38 P.3d 12, 28 (Ariz. 2002). "The purpose of such terms is so 'neither party will act to impair the right of the other to receive the benefits which flow from their agreement or contractual relationship.'" *Bike Fashion Corp.*, 46 P.3d at 434 (quoting *Rawlings*, 726 P.2d at 569–70).

Any claim for breach of good faith and fair dealing will be dismissed because Creech has not pled a contract.

### E.  Defendant Kind Lending, LLC

Kind Lending asks to be summarily dismissed from the AC because there are no allegations specific to Kind Lending in the AC. Creech does not dispute that there are no allegations against Kind Lending but complains that without the benefit of discovery, she was unable to distinguish Broker Solutions from Kind Lending because they both use the name "Kind Lending." Creech argues that she now has evidence to show how Kind Lending was involved and properly plead claims against it. Kind Lending responds by arguing that Creech has failed to articulate a viable legal theory against Kind Lending. The Court agrees that Creech has not specified a specific legal theory, the facts that she asserted in the response could possibly render Kind Lending liable if they were involved in some sort of deception in conjunction with Broker Solutions. Therefore, all claims in the AC against Kind Lending will be dismissed with leave to amend. Plaintiff, however, should be careful to ensure she has a legitimate legal basis for bringing Kind Lending in when they do not appear on any of the loan documents.

### IV.  LEAVE TO AMEND

"Leave to amend need not be given if a complaint, as amended, is subject to dismissal." *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 538 (9th Cir. 1989). The Court's discretion to deny leave to amend is particularly broad where Plaintiff has previously been permitted to amend his complaint. *Sisseton-Wahpeton Sioux Tribe v.*

*United States*, 90 F.3d 351, 355 (9th Cir. 1996). The Court finds that further attempts to amend the complaint against Barrett and Broker Solutions would be futile. However, the Court will allow amendment to add King Lending.

## V. CONCLUSION

For the above stated reasons,

**IT IS ORDERED** granting in part and denying in part, as described above, Defendant Barrett Financial Group's ("Barrett") 12(b)(6) Motion to Dismiss (Doc. 35).

**IT IS FURTHER ORDERED** granting in part and denying in part, as described above, Defendants Broker Solutions, Inc. dba Kind Lending, LLC ("Broker Solutions") and Kind Lending LLC's ("Kind Lending") Motion to Dismiss Plaintiff's First Amended Complaint (Doc. 41).

**IT IS FURTHER ORDERED** granting leave to amend to add King Lending. Plaintiff must file a Second Amended Complaint no later than 10 days after the date of this ruling.

Dated this 28th day of July, 2023.

Honorable Susan M. Brnovich
United States District Judge