**WO**

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Bonnie Creech, | No. CV-22-00871-PHX-SMB |
| Plaintiff, | **ORDER** |
| v. | |
| Kind Lending LLC and John Claude Hegglin, | |
| Defendants. | |

Four Motions are pending before the Court.  First, Defendant Kind Lending LLC's Motion to Dismiss (Doc. 70), to which Plaintiff Bonnie Creech filed a Response (Doc. 72) and Kind Lending LLC filed a Reply (Doc. 74.)  Second, Defendant John Claude Hegglin's Motion to Dismiss (Doc. 76).  Plaintiff did not file a responsive brief, but instead filed the third Motion at issue—a Motion for Rule 60(B) Relief & Leave to Amend (Doc. 84).  The fourth pending Motion is Hegglin's Motion for Rule 11 Sanctions (Doc. 75), to which Plaintiff filed a Response (Doc. 82) and Hegglin filed a Reply (Doc. 86).

After reviewing the briefing and relevant law, the Court will grant Kind Lending's Motion to Dismiss, grant Hegglin's Motion to Dismiss, deny Plaintiff's Rule 60(B) Motion, and deny Hegglin's Motion for Rule 11 Sanctions.

## I.    BACKGROUND

The case centers around a loan to purchase a manufactured home in Kingman, Arizona.  Plaintiff applied for a loan with Hegglin, who was working for Broker

Solutions, Inc.  Plaintiff received a loan prequalification agreement on March 23, 2021 that listed Barrett Financial Group, L.L.C. ("Barrett") as the lender.  She was prequalified for a $148,437 loan with 3.375% interest over 30 years.  Plaintiff found the manufactured home she wanted and made an offer which was accepted.  She alleges that the appraisal report was not timely sent to her, and the sellers told her they could not wait any longer for her to buy the house.  Plaintiff alleges that when she got the appraisal, the sellers agreed to decrease the price.  After that, Hegglin sent various documents that changed the origination charge, included an Architectural and Engineering Fee that Plaintiff had already paid, and increased the mortgage insurance costs.

During closing, Plaintiff called Hegglin to ask about some of the changes.  On the call, Hegglin also told Plaintiff that the home she was buying did not have a Manufactured Home ("MH") Advantage sticker, which made her ineligible for the original loan, so he switched her to a different loan product with a higher Annual Percentage Rate.  Plaintiff signed the closing documents on May 20, 2021, but the loan remained unfunded by May 25, 2021.  As a result, Plaintiff had to pay for her parents to stay in a hotel while waiting for the loan to fund.  She also suffered stress, anxiety, and loss of appetite because of the delays.  On May 26, 2021, Plaintiff was presented with a third set of closing documents.  These closing documents did not correct any of the previous errors, but she was forced to sign them to close and get her parents the housing they needed.  Hegglin had promised to refund the engineering fee and promised that Plaintiff would not be charged a second $250 mobile notary fee, but he did not follow through on these promises.

Following this Court's dismissal of her First Amended Complaint ("FAC"), Plaintiff filed her Second Amended Complaint ("SAC") alleging Truth in Lending Act ("TILA") and Arizona Consumer Fraud Act ("ACFA") violations.  Defendants Barrett, Broker Solutions, and Kind Lending filed Motions to Dismiss, and Defendant Barrett filed a motion to strike portions of her SAC.  The Court granted in part and denied in part Barrett's Motion and granted both Broker Solutions and Kind Lending's Motions to

Dismiss.  (Doc. 66.)  Plaintiff then filed her Third Amended Complaint ("TAC"), alleging a TILA violation against Hegglin and an ACFA violation against both Hegglin and Kind Lending.  (Doc. 68.)  Thereafter, Defendants Kind Lending and Hegglin filed the Motions to Dismiss now pending before the Court.  (Doc. 70; Doc. 76.)

## II.    LEGAL STANDARD

To survive a Federal Rule of Civil Procedure 12(b)(6) motion for failure to state a claim, a complaint must meet the requirements of Rule 8(a)(2).  Rule 8(a)(2) requires a "short and plain statement of the claim showing that the pleader is entitled to relief," so that the defendant has "fair notice of what the . . . claim is and the grounds upon which it rests."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  This exists if the pleader sets forth "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*

Dismissal under Rule 12(b)(6) "can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).  A complaint that sets forth a cognizable legal theory will survive a motion to dismiss if it contains sufficient factual matter, which, if accepted as true, states a claim to relief that is "plausible on its face."  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).  Plausibility does not equal "probability," but requires "more than a sheer possibility that a defendant has acted unlawfully."  *Id.*  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility.'"  *Id.* (quoting *Twombly*, 550 U.S. at 557).  Moreover, a complaint is not a vehicle to facilitate fishing expeditions in hope that some fact supporting an allegation will be uncovered.  *See Rodriguez v. Quality Loan Serv. Corp.*, No. CV-09-1853-PHX-FJM, 2010 WL 1644695, at *2 (D. Ariz. Apr. 22, 2010).

In ruling on a Rule 12(b)(6) motion to dismiss, the well-pled factual allegations are taken as true and construed in the light most favorable to the nonmoving party. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009).  However, legal conclusions couched as factual allegations are not given a presumption of truthfulness, and "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss."  *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998).  A court ordinarily may not consider evidence outside the pleadings in ruling on a Rule 12(b)(6) motion to dismiss.  *See United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003).  "A court may, however, consider materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment."  *Id.* at 908.

## III.   DISCUSSION

### A.  Kind Lending's Motion to Dismiss

Kind Lending moves to dismiss Plaintiff's TAC on two bases: (1) Plaintiff has not plead an ACFA claim against Kind Lending; and (2) Plaintiff pleads deficient facts to show a plausible agency relationship between King Lending and Hegglin.

#### 1.  Plaintiff's Claim Against Kind Lending

Kind Lending argues that Plaintiff has not asserted an ACFA against it, and therefore Count I of the TAC must be dismissed.  (Doc. 70 at 6.)  In response, Plaintiff contends that her factual allegations against Hegglin and Kind Lending substantiate facially valid independent and vicarious liability claims against Kind Lending.  (Doc. 72 at 4.)

To state a claim under ACFA a plaintiff must show that there was "(1) a false promise or misrepresentation made in connection with sale or advertisement of merchandise, and (2) consequent and proximate injury."  *Stratton v. Am. Med. Sec., Inc.*, No. CV-07-1491-PHX-SMM, 2008 WL 2039313, at *7 (D. Ariz. May 12, 2008).  "[T]he misled consumer must have suffered some damage as a result of the misrepresentation."

*Nataros v. Fine Arts Gallery of Scottsdale, Inc.*, 612 P.2d 500, 504 (Ariz. Ct. App. 1980) (footnote omitted).

Plaintiff cites several paragraphs in her TAC that allegedly state an ACFA claim against Kind Lending.  (Doc. 72 at 4; Doc. 68 at 4 ¶¶ 7–10, 15 ¶ 79, 17 ¶¶ 91–93.) Paragraphs 7–9 allege that the Massachusetts Division of Banks found Kind Lending LLC and Broker Solutions dba Kind Lending to have entered into an agreement in violation of the Massachusetts Consumer Fraud Act (the "Consent Orders").   In paragraph 10, Plaintiff alleges that the NMLS number on her loan documents was not Kind Lending LLC's NMLS number.  Paragraph 79 alleges that Chrissy Murphy, the lender representative on the loan transaction disclosures, worked for both Broker Solutions and Kind Lending during the loan transaction.  Paragraphs 91–92 allege that "Kind Lending, LLC through Hegglin" violated the ACFA by "failing to timely disclose the increased cost of the loan" and "fail[ing] in its duty of acer by misrepresenting or willfully failing to disclose . . . material disclosures for the Loan Transaction."

The Court does not find these allegations sufficient to state a direct claim against Kind Lending under the ACFA.  First, Exhibit 5 attached to the TAC shows that Murphy left Broker Solutions in October 2021 and began working at Kind Lending that same month.  (Doc. 68-1 at 33.)  The May 2021 loan disclosures only identify Murphy as a point of contact for Broker Solutions.  (Doc. 35-1 at 39.)   Thus, the record belies Plaintiff's contention that Murphy was employed at both companies during the loan transaction.   Moreover, the Consent Orders found that Kind Lending LLC engaged in activities that the Division of Banks "believe[d] w[ere] misleading or had the ability or capacity to mislead consumers into thinking that the Entity and Kind Lending were not separate and distinct companies."  (Doc. 68-1 at 14.)  In this case, the Note, Deed of Trust, Manufactured Home Rider, and loan disclosure listed "Broker Solutions, Inc. dba Kind Lending" as the creditor, (Doc. 35-1 at 2, 5, 19, 21, 32, 34–35, 39), and lists a NMLS number not belonging to Kind Lending LLC.  (*See* Doc. 68 at 4 ¶ 10.)  And, in Plaintiff's own words, her AFCA claim against Kind Lending is brought based on

1    Hegglin's conduct, not Kind Lending's.  (*Id.* at 17 ¶ 91.)  Plaintiff does not express, or

2    reasonably imply, that her ACFA claim is directed against Kind Lending independent of

3    Hegglin's actions throughout the loan transaction.

4            Plaintiff's Complaints have not been paragons of clarity.  Indeed, reading the TAC

5    while assuming all well-plead are true still shows nothing more than "naked assertions"

6    about Kind Lending's direct violation of the ACFA.  *Iqbal*, 556 U.S. at 678.   As

7    discussed below, this issue is only addled by Plaintiff's attempts to employ a backwards

8    theory of apparent agency.  And, notably, Plaintiff concedes that she cannot "fully and

9    accurately allege the facts of the case" without first conducting discovery.  (Doc. 72 at 4.)

10   Rule 8 requires Plaintiff to plead "enough facts to state a claim to relief that is plausible

11   on its face." *Twombly*, 550 U.S. at 570.  She cannot use discovery to conduct a "fishing

12   expedition" to potentially uncover facts supporting her allegations. *See Rodriguez*, 2010

13   WL 1644695, at *2.  The Court ultimately finds that Plaintiff has failed to assert an

14   ACFA claim specifically against Kind Lending LLC.

15                *2. Agency and Joint Venture Theories*

16           Kind Lending argues that it did not make any representations to Plaintiff that

17   would cause her to believe that Hegglin was its agent.  (Doc. 70 at 6–8.)  In response,

18   Plaintiff contends that an email from a "Kind Lending" email address instructing her to

19   contact Hegglin amounted to King Lending representing that Hegglin was its agent.

20   (Doc. 72 at 5.)

21           Under Arizona law, to adequately plead vicarious liability under a theory of

22   agency a plaintiff must show that the principal's conduct allowed a third-party to

23   reasonably conclude that an agent was authorized to make representations on behalf of

24   the principal. *See Miller v. Mason-McDuffie Co. of S. Calif.*, 739 P.2d 806, 810 (Ariz.

25   1987).  Importantly, apparent agency cannot be established by brand signage alone. *Am.*

26   *Motor Sales Corp. v. Sup. Ct.*, 494 P.2d 394, 396–97 (Ariz. Ct. App. 1972) (automobile

27   dealer agreements, advertising, and stationary not indicia of agency); *Colson v. Maghami*,

28   No. CV 08-2150-PHX-MHM, 2010 WL 2744682, *12–13 (D. Ariz. July 9, 2010)

(finding no apparent agency where a plaintiff relied on brand signage and a principal never directly told plaintiff about agent authority); *see also Ocana v. Ford Motor Co.*, 992 So. 2d 319, 326–27 (Fl. Dist. Ct. App. 2008) (allowing a dealer to "hold itself out" as authorized dealer, displaying Ford logos and other advertising, providing warranty, and training personnel insufficient to establish agency).

Previously, the Court found that Plaintiff had failed to plead an agency relationship where "the only allegation made in the SAC to support agency is that the loan documents 'and elsewhere' represented that Hegglin acted on behalf of Broker Solutions 'which were apparent representations for Kind Lending LLC.'" (Doc. 66 at 11 (quoting Doc. 52 at 6 ¶ 24).) This finding, in part, rested upon the Court's determination that Broker Solutions dba Kind Lending and Kind Lending LLC are separate entities. (*See* Doc. 66 at 11.) Now, Plaintiff's TAC attempts to cast doubt on that determination. Relying on the Consent Orders, Plaintiff alleges that because Kind Lending's brand appeared alongside Broker Solutions NMLS number, "the public could not separate and understand they were distinct companies." (Doc. 68 at 4 ¶¶ 9–10; *see* Doc. 68-1.) Altering the Court's finding is not the boon Plaintiff believes it to be. If the Court found that, like in the Consent Orders, the public could not separate and understand that the two were distinct companies, it would not change the legal requirement for apparent agency—Kind Lending must have made a representation to Plaintiff that Hegglin was its agent. Plaintiff's TAC belies this necessary fact wherein she alleges that Hegglin, an employee of Broker Solutions dba Kind Lending, emailed her from "LoanDocs@KindLending.com." (Doc. 68 at 4–5 ¶ 11; Doc. 68-1 at 28.) Hegglin emailing Plaintiff directly does not equate to Kind Lending, as the alleged principal, representing to Plaintiff that Hegglin was its agent. To be sure, confusion may exist because Broker Solutions used a "KindLending.com" email address, however, it still does not show that Kind Lending made representations to Plaintiff regarding any of agency relationships.

At bottom, although Plaintiff's allegations question the nature of Kind Lending

1    LLC and Broker Solutions dba Kind Lending's relationship, there are insufficient facts

2    plead to show that Kind Lending LLC made the required direct representations to

3    Plaintiff that Hegglin was its agent.  (*See e.g., id.* at 4–5 ¶ 11; 6–7 ¶¶ 25–28; 17 ¶¶ 91–

4    92.)[1]

5        Kind Lending also argues that Plaintiff's joint venture claim fails as a matter of

6    law because it is not an independent cause of action.  (Doc. 70 at 8–9.)  And, even if it

7    were a valid cause of action, Kind Lending posits that Plaintiff has failed to set forth facts

8    in her TAC demonstrating the required elements.  (*Id.*)  In response, Plaintiff seemingly

9    concedes that joint venture is not an independent cause of action, but otherwise contends

10   that she has sufficiently plead all required elements.  (Doc. 72 at 7.)

11       A joint venture is a theory of liability, not a separate legal claim.  *See Griffin*

12   *Aerosat USA*, No. 2:10-cv-01838 JWS, 2010 WL 4580192, at *6 (D. Ariz. Nov. 2, 2010).

13   The elements of a joint venture include "(1) an agreement, (2) a common purpose, (3) a

14   community of interest, (4) an equal right of control, and (5) participation in profits and

15   losses."  *Hernandez-Wheeler v. Flavio*, 930 P.2d 1309, 1312 (Ariz. 1997).  Additionally,

16   to rely on a joint venture theory, plaintiffs must "plead facts giving rise to a plausible

17   inference that the appropriate elements are met."  *Griffin Aerosat*, 2010 WL 4580192, at

18   *6.  "Joint venture" does not stand as an independent claim for relief, and in the absence

19   of properly pled facts, is not an available theory of vicarious liability.  *Id.*

20       Plaintiff does not allege an agreement between Kind Lending and Hegglin.  (*See*

21   *id.*)  Instead, Plaintiff contends that Kind Lending and Hegglin "act[ed] in concert" under

22   an alleged agreement between Kind Lending and Broker Solutions.  (*Id.*)  Thereafter,

23   Plaintiff merely recites the elements of a joint venture.  (*Id.*)  Typically, a complaint must

24   expressly set forth facts to give rise to a "plausible inference" of a joint venture.  *Griffith*

25   *Aerosat,* 2010 WL 4580192, at *6.  As alleged, the facts give rise to an assuredness that a

26

---

27   [1]  The Court also notes that Plaintiff's TAC is unclear as to against whom she asserts
     what theory of liability and how such theory may be supported.  Although Plaintiff
28   heeded the Court's advice to be "abundantly clear" about which claims she brings against
     which Defendants (Doc. 66 at 10 n.2), she has overlooked that advice with respect to how
     the alleged agency relationships coalesced.

joint venture did not exist. *See id.* Therefore, Plaintiff's joint venture "claim" fails.

Ultimately, because Plaintiff has not plead sufficient facts to sustain a direct or vicarious liability claim for violation of the ACFA against Kind Lending, the Court will grant Kind Lending's Motion to Dismiss.

**B. Hegglin's Motion to Dismiss**

The Court has twice dismissed Plaintiff's TILA claims against Barrett Financial, the loan originator. (Docs. 51 & 66.) Now, in her TAC, Plaintiff alleges that Hegglin violated the TILA Regulation Z by "failing to timely disclose the increased costs of the Loan Transaction." (Doc. 68 at 20–21 ¶ 109.) Hegglin contends that because the TILA claim Plaintiff makes does not apply to non-creditors like Hegglin, her claim fails as a matter of law. (Doc. 76 at 4.) Plaintiff did not submit a brief in response.

TILA is a consumer protection statute that seeks to "avoid the uninformed use of credit." 15 U.S.C. § 1601(a). "TILA requires that lenders provide certain disclosures to borrowers reflecting the terms of the legal obligation between the parties." *Soriano v. Countrywide Home Loans, Inc.*, No. 09-CV-02415-LHK, 2011 WL 2175603, at *6 (N.D. Cal. June 2, 2011). The *creditor* is the liable party. *See Garcia v. Fannie Mae*, 794 F. Supp. 2d 1155, 1168–70 (D. Or. 2011) (finding pursuant to 15 U.S.C. § 1640(a), only creditors can be held liable for monetary penalties or an award of attorneys' fees for TILA violations, while, in contrast, 15 U.S.C. § 1641(c) provides a right to rescind against a creditor's assignee).

Plaintiff alleges that "[l]oan officer [Hegglin] violated the TILA Regulation Z by failing to timely disclose the increased cost of the loan transaction under 12 C.F.R. § 1026.17(f). (Doc. 68 at 20–21 ¶¶ 109–10.) 12 C.F.R. § 1026.17(f) mandates that "*creditor*[*s*] shall disclose" certain changes in the terms before consummation. (Emphasis added.) Previously, the Court dismissed Plaintiff's TILA claim because she asserted it against Barrett, a non-creditor loan originator who bore no liability under the pleaded TILA provisions. (Doc. 51 at 5 (citing 15 U.S.C. § 1640).) Plaintiff's TAC is similarly deficient as it does not plausibly allege that Hegglin is the creditor, nor does it

assert a legal claim under an applicable TILA provision.  *See* 12 C.F.R. § 1026.17.
Moreover, Plaintiff's proffered case law to prove that Hegglin is the correct target for her
claim is inapposite as they dealt with actions against creditors, not loan officers.  *See*
*DeMando v. Morris*, 206 F.3d 1300, 1303 (9th Cir. 2000) (allowing Plaintiff to proceed
in a TILA claim asserted against a *creditor*); *Balderas v. Countrywide Bank, N.A.*, 664
F.3d 787, 789 (9th Cir. 2011) (same); *Abubo v. Bank of N.Y. Mellon*, 977 F. Supp. 2d
1037, 1044 (D. Haw. Oct. 15, 2013) (same).  Plaintiff has again asserted a TILA claim
against a party not liable under the plead statutory provisions.  Therefore, Plaintiff's
claim fails as a matter of law.

### C. Plaintiff's Rule 60 Motion

Plaintiff moves for relief from this Court's prior Orders under Rule 60(b)(1)
and (2).  Rule 60(b) provides mechanisms for relief from a judgment or order in certain
scenarios, including: "(1) mistake, inadvertence, surprise, or excusable neglect; [or] (2)
newly discovered evidence that, with reasonable diligence, could not have been
discovered in time to move for a new trial under Rule 59(b)."  Fed. R. Civ. P. 60(b); *see*
*also Sch. Dist. No. 1J, Multnomah Cty. v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir.
1993).  The moving party bears the burden of proving the existence of a basis for Rule
60(b) relief.  *Cassidy v. Tenorio*, 856 F.2d 1412, 1415 (9th Cir. 1988). Although the
moving party's factual allegations are accepted as true, "mere legal conclusions, general
denials, or simple assertions are insufficient to justify overturning the underlying
judgment."  *Campbell v. Garza*, No CV 21—2231-PHX-2231-JAT (CBD), 2022 WL
1131094, *1 (D. Ariz. Apr. 15, 2022).

#### 1. Timeliness

Barrett asserts that Plaintiff's Rule 60 Motion is untimely because it was filed
outside of the fourteen-day period prescribed for the filing of motions for reconsideration
under LRCiv 7.2(g).  (Doc. 94 at 12.)  Plaintiff does not make any discernible argument
in response; however, the Court disagrees with Barret.  The District Court has discussed
the interplay between Rule 60(b) and LRCiv 7.2(g) in at least one instance.  In *McPhatter*

*v. Ryan*, No. CV–11–8147–PCT–RCB(JFM), 2013 WL 428280, *2 (D. Ariz. Feb. 4, 2013), the plaintiff moved for unspecified relief from a default judgment long after the fourteen-day period for motions for reconsideration under LRCiv 7.2(g) and the twenty-eight-day period for amending judgments under Federal Rule of Civil Procedure 59(e). *Id.* As a result, the Court considered the "[n]ature of [the] [m]otion" to discern which time limitations applied. *Id.* Because plaintiff sought to have his case "reopen[ed]" and "reconsider[ed]," and because defendant challenged the motion under Rule 60(b)(1), the Court found plaintiff's motion to be a request for relief under Rule 60. Thus, the Court applied the timing requirements in Rule 60(c)(1), not LRCiv 7.2(g). *Id.* at *3. While the Court is keenly aware of attempts to disguise one motion for another to relitigate and obtain relief on settled issues, this is no such attempt. *See e.g.*, *United States v. Washington*, 653 F.3d 1057, 1060–61 (9th Cir. 2011) (discussing successive 28 U.S.C. § 2255 motions masqueraded as Rule 60 motions). Despite some unclarity, Plaintiff's Motion specifies that she seeks relief under Rule 60(b)(1) and (2). (Doc. 84 at 8, 19.) Therefore, Plaintiff is subject to the timing requirements of Rule 60(c)(1) and not LRCiv 7.2(g).

Because Plaintiff seeks relief under Rule 60(b)(1) and (2), her Motion must have been filed "no more than a year after the entry of the judgment or order or date of the proceeding." Fed. R. Civ. P. 60(c)(1). Although the Court can discern that Plaintiff is moving under Rule 60, the scope of the relief she seeks is somewhat unclear and inconsistent. Plaintiff first asks this Court to "vacate the Order dismissing Broker Solutions, and Barrett Financial and plaintiffs [sic] state law claims." (Doc. 84 at 1.) Plaintiff then concludes with a request that the Court "vacate its *orders* of dismissal and grant [Plaintiff] leave to amend her complaint to allege TILA and state claims more specifically with the new evidence." (*Id.* at 22 (emphasis added).) And throughout her Motion, Plaintiff's request seemingly concerns the Court's July 28, 2023 Order (Doc. 51) and March 3, 2024 Order (Doc. 66), both of which dismissed various claims and granted Plaintiff leave to amend. Plaintiff filed her Rule 60 Motion on June 4, 2024, making her

1    request timely as to each order.

2                    *2. Rule 60(b)(1)*

3        The Supreme Court recently clarified that Rule 60(b)(1) covers "all mistakes of
4    law made by a judge." *Kemp v. United States*, 596 U.S. 528, 534 (2022) ("[I]n its legal
5    usage, 'mistake' includes errors 'of law or fact.' Thus, regardless whether 'mistake' in
6    Rule 60(b)(1) carries its ordinary meaning or legal meaning, it includes a judge's
7    mistakes of law." (internal citation omitted)). And, courts have otherwise long held Rue
8    60(b) relief is proper where a judge has erred in law. *See, e.g.*, L*iberty Mut. Ins. Co. v.
9    E.E.O.C.*, 691 F.2d 438, 441 (9th Cir. 1982) ("The law in this circuit is that errors of law
10   are cognizable under Rule 60(b)." (citing *Gila River Ranch, Inc. v. United States*, 368
11   F.2d 354, 356 (9th Cir. 1966)).

12       Plaintiff argues that the Court erred when it dismissed Barrett after it held that her
13   ACFA claim was merely a repackaged TILA claim (Doc. 66 at 6), because Plaintiff can
14   plead multiple claims under a single set of facts. (Doc. 84 at 19–20.) In support of her
15   position, Plaintiff contends that the Court misinterpreted *Cel-Tech Commc'ns, Inc. v. Los
16   Angeles Cellular Tel. Co.*, 973 P.2d 527 (Cal. 1999), to conclude reusing the facts
17   underpinning her TILA claim to support her ACFA claim was impermissible. (*See* Doc.
18   66 at 6.) Barrett simply maintains that the Court's prior dismissal was justified. (Doc. 94
19   at 11.)

20       In *Cel-Tech*, the California Supreme Court considered, among other things,
21   whether a plaintiff could effectively "'plead around' an 'absolute bar to relief' simply 'by
22   recasting the cause of action'" for another. 973 P.2d at 541 (quoting *Manufacturers Life
23   Ins. Co. v. Superior Court*, 895 P.2d 56, 71 (Cal. 1995)). The California high court
24   answered that inquiry in the negative—that is, plaintiff's may not "relabel[] the nature of
25   the action" to skirt immunity. *Id.* (quoting *Rubin v. Green*, 847 P.2d 1044, 1053–54 (Cal.
26   1993) ("If the policies underlying [a law] are sufficiently strong to support an absolute
27   privilege, the resulting immunity should not evaporate merely because the plaintiff
28   discovers a conveniently different label for pleading what is in substance an identical

grievance arising from identical conducted as that protected by [that law].")) Here, however, Plaintiff argues that no such immunity precludes Barrett from being liable under the ACFA for alleged acts that would be violative of the TILA. (Doc. 84 at 20–21; Doc. 91 at 8–9.) And, Plaintiff contends that, while TILA preempts liability for creditors from state disclosure requirements incongruent to the TILA, it does not preempt claims under state statutes prohibiting unfair or deceptive practices, like the ACFA. (Doc. 84 at 21 (citing *Peel v. Brooks Am. Mortgage Corp.*, 788 F. Supp. 2d 1149, 1158–59 (C.D. Cal. 2011); *Baker v. Aegis Wholesale Corp.*, 2010 WL 2853915, at *6 (N.D. Cal. July 21, 2010)).)

The Court generally agrees with Plaintiff's premise—a party may plead multiple causes of action under a single set of facts so long as no extraneous forces, such as immunity, are at play. Thus, if a plaintiff asserted that a defendant's actions violated both an inapplicable federal statute and an applicable state statute, the action should be allowed to proceed on the state claim. Although, the Court disagrees with Plaintiff's view on how this Court employed *Cel-Tech*, as it cited the case for the proposition that disguising a factually deficient claim as another cannot revive the claim. In fact, the Court's analysis when it dismissed the FAC and the SAC primarily targeted Plaintiff's failure to put forth more than mere conclusions of law to support that Barrett violated the TILA or the ACFA. (*See* Doc. 51 at 4–5; Doc. 66 at 6.)

The Court fails to see an error of law in either prior Order with respect to Barrett, although it endeavors to clarify why the allegations in Plaintiff's SAC were insufficient to establish an ACFA claim against the company. As discussed, to have a valid ACFA claim, a plaintiff must show that there was "(1) a false promise or misrepresentation made in connection with sale or advertisement of merchandise, and (2) consequent and proximate injury." *Stratton*, 2008 WL 2039313, at *7. "[T]he misled consumer must have suffered some damage as a result of the misrepresentation." *Nataros*, 612 P.2d at 504 (footnote omitted). And notably, TILA is only preempted where "state consumer fraud legislation . . . [is] 'inconsistent' with the terms required by TILA." (Doc. 66 at 6–

7 (citing *Newbeck v. Wash Mut. Bank*, No. 09–1599, 2010 WL 291821, at *3 (N.D. Cal., Jan 19, 2010)).); *see also Peel v. Brooks America Mortg. Corp.*, 788 F. Supp. 2d 1149, 1158–59 (C.D. Cal. 2011) (state law mortgage fraud clams not preempted by TILA).

The Court previously found that "Plaintiff['s] attempt[] to apply liability for the disclosure violations, covered by 15 U.S.C. § 1639, into § 1639(b)(1) is not supported." (Doc. 51 at 5.)  The Court went on to hold that the TILA *duty definition* could not be substituted into an ACFA claim to support a state law cause of action.  (Doc. 66 at 6.)  In other words, the Plaintiff could not rely on allegations directed at establishing liability under federal law as a crutch to support a state law claim.  (*See id.*)  Reexamining Plaintiff's SAC, she alleged that Barrett, through Hegglin, violated that ACFA by failing to timely disclose the increased cost of the loan prior to closing.  (Doc. 52 at 18 ¶ 95.) Plaintiff then asserted that Barrett, through Hegglin, failed in its duty of care "for mortgage originators as implemented by Regulation Z under 15 U.S.C. 1639(b)(1)(A)." (*Id.* ¶ 96.)  There is little else in the SAC that speaks to Barrett's actions as being violative of the ACFA.  (*See generally id.*)  Even if Plaintiff could have utilized the same set of facts to mold an ACFA out of actions that would violate the TILA if lodged against an appropriate defendant, she repeatedly failed to do so.  Instead, Plaintiff asserts conclusory allegations that Barrett is liable under the ACFA because its actions would violate the specific duty prescribed under the TILA.

This is a pleading approach that has been aptly characterized as a type of shotgun pleading that "does not commit the mortal sin or re-alleging all preceding counts but is guilty of the venial sin of being replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action."  *Weiland v. Palm Beach Cty. Sheriff's Off.*, 792 F.3d 1313, 1322–23 ("The unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests.").  At bottom, the Court's citation to *Cel-Tech* to partly express the issues with Plaintiff's SAC was not an error of law within the ambit of Rule 60(b)(1).

Moreover, after reviewing the SAC under Rule 12(b)(6), it is rife with conclusory allegations that demanded dismissal.[2]

### 3. Rule 60(b)(2)

Rule 60(b)(2) provides allows the Court to relieve a party from the effects of a prior Order when it presents "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b)."  The plain terms of the Rule establish two predicate circumstances to move for such relief— there must have been a trial, and the evidence must have been unavailable within the period to move for a new trial under Rule 59(b).  *Marroquin v. City of Los Angeles*, 112 F.4th 1204, 1215 (9th Cir. 2024) ("Our analysis thus begins—and ends—with the plain language of Rule 60(b)(2).");  *see also* Fed. R. Civ. P. 59(b) ("A motion for a new trial must be filed no later than 28 days after the entry of judgment.");  *cf. Protective Life Ins. Co. v. Mizioch*, No. CV10–1728–PHX–JAT, 2012 WL 3655354, *4–5 (D. Ariz. Aug. 27, 2012) (applying Rule 60(b)(2) on a motion for summary judgment (citing *Jones v. Aero/Chem Corp.*, 921 F.2d 875, 878 (9th Cir. 1990) (applying Rule 60(b)(2) on a *post-trial* motion))).  Plaintiff seeks relief from two prior pre-trial Orders on motions to dismiss.  Thus, because Rule 60(b)(2) provides relief only after a trial has occurred, Plaintiff's request is outside the ambit of what the Rule allows the Court to consider.

Even if the Court considered the merits of Plaintiff's Motion, she has not established that Mr. Andrew Pizor, an expert who "regularly communicate[s] with consumer-rights attorneys" and "monitor[s] court cases . . . around the country," was

---

[2]  Plaintiff also contends that she has been unfairly prejudiced by an alleged delay in discovery.  (Doc. 84 at 6–7.)  It is unclear whether Plaintiff is simply stating this or arguing that the alleged prejudice warrants relief under Rule 60(b)(1) or (2).  In any event, Plaintiff's claimed prejudice allegedly flows from opposing counsels' unwillingness to engage discovery, which, in Plaintiff's own words, "unfairly burdened [her] to respond to Motions to Dismiss without the benefit of any discovery relative to the very specific alleged violations of TILA and the ACFA."  (*Id.* at 7.)  Additionally, Plaintiff asserts that the Court's failure to order a Rule 16 conference and facilitate discovery addled the inflicted prejudice in this "two-year merry-go-round of Motions to Dismiss."  (*Id.*)  As discussed above, discovery is not to be used as a fishing expedition to ameliorate the fatal issues in a deficiently plead complaint.  *Rodriguez*, 2010 WL 1644695, at *2.  Additionally, Plaintiff does not cite, or otherwise apprise the Court of, what legal authority demands relief in the face of the alleged suffered prejudice.  Thus, Plaintiff's claim falls flat.

unavailable or otherwise undiscoverable such that his report constitutes diligently sought "newly discovered evidence" under Rule 60(b)(2). *See* 11 Charles A. Wright, et al. Wright & A.Miller, Federal Practice & Procedure: Civil § 2859 (3d ed.) ("[T]he failure to locate a witness prior to trial, who the movant later argues was important to the case, will be treated as a lack of due diligence."); *see also Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 892 n.6 (9th Cir. 1994) (noting that evidence is not newly discovered if it "could have been discovered with reasonable diligence" at the time of summary judgment; *Fisher v. Kadant, Inc.*, 589 F.3d 505, 513–14 (1st Cir. 2009) (denying Rule 60(b)(2) relief where consumers could not show why they could not have obtained evidence regarding defective products earlier); *New Hampshire Ins. Co. v. Martech USA, Inc.*, 993 F.2d 1195, 1200–01 (5th Cir. 1993). In fact, Plaintiff seemingly could have retained Mr. Pizor prior to the outset of this litigation, as she filed suit in May 2022, and his opinion is related only to the payments included in the May 2021 TILA disclosure. (*See* Doc. 1 at 6 ¶ 27.)

Additionally, Plaintiff contends that "it is illogical to assume that Plaintiff could be aware of [the Consent Decrees]" because they were published after the *original* Complaint, and Plaintiff's counsel only discovered how the Decrees evidenced Kind Lending and Broker's deceptive conduct during the drafting of the TAC. (Doc. 84 at 9.) The Consent Decrees were published in September 2022 and January 2023. (Doc. 68-1 at 17, 26.) Interestingly, Plaintiff's SAC, which references the Consent Decree against Kind Lending, was filed August 7, 2023. (Doc. 52 at 4 ¶ 10.) Here, Plaintiff's contention is illogical because her argument does not track the allegations in her own filings in this Court. Plaintiff's sheer lack of diligence alone topples her attempt to paint the Consent Decrees as "new evidence." *Wallis*, 26 F.3d at 892 n. 6.

### 4. Leave to Amend

In her Rule 60 Motion Plaintiff also moved for leave to amend her TAC to "reallege her claims against all Defendants for violation of TILA, the ACFA, breach of contract and fiduciary duties." (Doc. 84 at 17.) "Leave to amend need not be given if a

1   complaint, as amended, is subject to dismissal." *Moore v. Kayport Package Express,*
2   *Inc.*, 885 F.2d 531, 538 (9th Cir. 1989). The Court's discretion to deny leave to amend is
3   particularly broad where Plaintiff has previously been permitted to amend his complaint.
4   *Sisseton-Wahpeton Sioux Tribe v. United States*, 90 F.3d 351, 355 (9th Cir. 1996). For
5   the reasons discussed in this Order, as well as the Court's March 2024 Order (Doc. 66),
6   the Court will deny Plaintiff's request for leave to amend as further attempts to amend the
7   complaint would be futile.

8       **D. Motion for Sanctions**

9       Hegglin moves for Rule 11 sanctions because Plaintiff has asserted a TILA claim
10  against a non-creditor for the third time. (Doc. 75 at 1.) Hegglin argues that this Court
11  has twice ruled that TILA does not apply to non-creditors, and thus Plaintiff's claim
12  clearly disregards prior Orders. (*Id.* at 1–2.) In response, Plaintiff argues sanctions are
13  unwarranted because TILA regulations allow claims against mortgage originators and the
14  Court dismissed prior iterations of the TILA claims asserted against other Defendants,
15  not Hegglin. (Doc. 82 at 2–3.)

16      The "central purpose of Rule 11 is to deter baseless filings." *Cooter & Gell v.*
17  *Hartmarx Corp.*, 496 U.S. 384, 393 (1990). Where "a complaint is the primary focus of a
18  Rule 11 proceeding, a district court must conduct a two-prong inquiry to determine (1)
19  whether the complaint is legally or factually baseless from an objective perspective, and
20  (2) if the attorney has conducted a reasonable and competent inquiry before signing and
21  filing it." *Holgate v. Baldwin*, 425 F.3d 671, 676 (9th Cir. 2005) (quoting *Christian v.*
22  *Mattel, Inc.*, 286 F.3d 1118, 1127 (9th Cir. 2002)). "The complaint need not be wholly
23  baseless to be sanctionable: A partially supported, partially unsupported filing may still
24  be sanctionable." *Lake v. Hobbs*, 643 F. Supp. 3d 989, 996 (D. Ariz. 2022) (citing
25  *Townsend v. Holman Consulting Corp.*, 929 F.2d 1358, 1362–65 (9th Cir. 1990) ("The
26  relation of the allegedly frivolous claim to the pleading as a whole is thus a relevant
27  factor, but the mere existence of one non-frivolous claim is not dispositive . . . .")). "Nor
28  does a subjective good faith belief provide safe harbor. Rule 11's objective standard

eliminates the 'empty-head pure-heart' justification for frivolous arguments." *Id.* (quoting *Smith v. Ricks*, 31 F.3d 1478, 1488 (9th Cir. 1994)).  And, in assessing the pre-filing inquiry, "the court's task is to determine 'whether an attorney, after conducting an objectively reasonable inquiry into the facts and law, would have found the complaint to be well-founded.'" *Id.* (quoting *Holgate*, 425 F.3d at 677).  Courts must consider "all the circumstances of a case," *Cooter*, 496 U.S. at 401, "focusing on the information available when the paper is filed," *Lake*, 643 F. Supp. 3d at 996 (citing *Golden Eagle Dist. Corp. v. Burroughs Corp.*, 801 F.2d 1531, 1538 (9th Cir. 1986)).

In prior Orders, the Court dismissed the TILA claims against Barrett (Doc. 51) and Kind Lending (Doc. 66) because neither Defendant were a creditor liable under the TILA.  In Plaintiff's TAC, she alleges Hegglin violated the TILA Regulation Z and 12 C.F.R. § 1026.17(f) by failing to timely disclose the increased costs of the loan transaction.  (Doc. 68 at 21 ¶ 110.)  These provisions apply to creditors—which Hegglin is not.  In her Response to the Motion for Sanctions, Plaintiff contends that the TILA applies to "mortgage originators" as well as creditors.  (Doc. 82 at 2.)  However, Plaintiff did not allege in the TAC that Hegglin violated those provisions or otherwise cite to the provisions therein creating a private right to action to sue Hegglin.  (*See* Doc. 68.)

Although Plaintiff has still not asserted a sustainable claim for relief, this Court does not believe sanctions are appropriate.  While federal courts are keenly aware of "the time and expense that . . . repeated filings of substantially identical complaints" costs both the parties and the tribunal, *Soto v. Bank of Am.*, No. 09–cv–03429–JAM–KJM, 2010 WL 1779892, *2 (E.D. Cal. Apr. 29, 2010), sanctions should be imposed "only in the most egregious situations, lest lawyers be deterred from vigorous representation of their clients." *United Nat'l Ins. Co. v. R&D Latex Corp.*, 242 F.3d 1102, 1115 (9th Cir. 2001) (citations omitted).  This Court's prior Orders dismissed TILA claims against other Defendants, not Hegglin.  Now, posed with the task of refashioning her claims against the remaining Defendants, Plaintiff has advanced legal and factual claims against Hegglin that are best captured as insufficient, not baseless.

1    Put simply, Plaintiff has failed to plead sufficient facts and law to crest the hill and

2    maintain a valid TILA claim against Hegglin.  When a pleading or filing is not entirely

3    successful, it does not automatically ascribe the quality "frivolous."  *See Gamble v.*

4    *Kaiser Found. Health Plan., Inc.*, 348 F. Supp. 3d 1003, 1030 (N.D. Cal. 2018).  And

5    although this litigation has been replete with fraught attempts to sustain a TILA claim,

6    failed attempts have not been summarily reasserted against the same Defendants.

7    Therefore, the Court will deny Hegglin's Motion for Sanctions (Doc. 75).

8    **IV.    CONCLUSION**

9         Accordingly,

10        **IT IS HEREBY ORDERED** granting Defendant Kind Lending LLC's Motion to

11   Dismiss Count I of the TAC (Doc. 70) and Defendant John Claude Hegglin's Motion to

12   Dismiss Count II of the TAC (Doc. 76).

13        **IT IS FURTHER ORDERED** dismissing Kind Lending LLC from this case

14   without prejudice.

15        **IT IS FURTHER ORDERED** denying Plaintiff Bonnie Creech's Rule 60 Motion

16   for Relief & Leave to Amend (Doc. 84).

17        **IT IS FURTHER ORDERED** denying Defendant John Claude Hegglin's Motion

18   for Rule 11 Sanctions (Doc. 75).

19        Dated this 25th day of October, 2024.

20

21

22                                    Honorable Susan M. Brnovich
                                      United States District Judge
23

24

25

26

27

28